## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES NUNLEY, individually; | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| ROUNDY'S SUPERMARKETS, INC., a Wisconsin corporation d/b/a MARIANO'S; and FRESH EXPRESS, INC., a Delaware corporation, | ) ) ) ) ) |
| Defendants. | ) ) |

### COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, by and through his attorneys, GARY NEWLAND of NEWLAND AND NEWLAND and MARLER CLARK, L.L.P., P.S. (*pro hac vice* pending) and by this complaint complains of the Defendant ROUNDY'S SUPERMARKETS, INC. d/b/a MARIANO'S (herein after referred to as "the Defendant"), hereby states, alleges, and complains as follows:

### PARTIES

1. Plaintiff Charles Nunley is a resident of Wheaton, DuPage County, Illinois. Plaintiff resides within the jurisdiction of this Court and is a citizen of the State of Illinois

2. At all times relevant to this action, Defendant Roundy's Supermarkets, Inc., was a Wisconsin corporation doing business as various grocery stores with locations throughout Illinois and Wisconsin, with its principal place of business in Milwaukee, WI. Therefore, Roundy's Supermarkets, Inc., is a citizen of the State of Wisconsin.

3. At all times relevant to this action, Defendant Fresh Express, Inc., was a corporation organized and existing under the laws of the state of Delaware with its headquarters located at

4757 The Grove Drive, Suite 260, Windermere, Florida 34786. Therefore, Defendant Fresh Express, Inc., is a citizen of the states of Delaware and Florida.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because the Defendants have certain minimum contacts with the State of Illinois such that maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

5. Venue in the United States District Court for the Norther District of Illinois is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims and causes action occurred in this judicial district, and because the defendant is subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## FACTS

**The Outbreak**

6. The Centers for Disease Control and Prevention (CDC) investigated a multistate outbreak of Shiga toxin-producing *E. coli* O157:H7 infections in late 2019. A total of 167 people infected with the outbreak strain of *E. coli* O157:H7 were reported from 27 states.

7. Illnesses started on dates ranging from September 20, 2019, to December 21, 2019. Ill people ranged in age from less than 1 to 89 years, with a median age of 27. Sixty-four percent of ill people were female. Of 165 ill people with information available, 85 (52%)

hospitalizations were reported, including 15 people who developed hemolytic uremic syndrome (HUS), a type of kidney failure. No deaths were reported.

8. Epidemiologic, laboratory, and traceback evidence indicated that romaine lettuce from the Salinas Valley growing region in California growing region was the likely source of this outbreak.

9. The Maryland Department of Health identified the outbreak strain of *E. coli* O157:H7 in an unopened package of Ready Pac Foods Bistro® Chicken Caesar Salad collected from a sick person's home in Maryland. The Wisconsin Department of Health Services identified the outbreak strain of *E. coli* O157:H7 in an unopened bag of Fresh Express® Leafy Green Romaine collected from an ill person's home in Wisconsin. The Salinas Valley growing region in California was the main source of the romaine lettuce in both products.

10. Additionally, states and the U.S. Food and Drug Administration traced the source of some of the romaine lettuce eaten by ill people. Information gathered indicated that the romaine lettuce of interest was harvested from the Salinas Valley growing region in California. As of January 15, 2020, this outbreak appears to be over.

**Prior Outbreaks Linked to Lettuce and Other Leafy Greens**

11. *E. coli* O157:H7 outbreaks associated with lettuce and other leafy greens are by no means a new phenomenon. Outlined below is a list of *E. coli* outbreaks involving contaminated lettuce or leafy greens in the past decade:

| Date | Vehicle | Etiology | Confirmed Cases | States/Provinces |
|---|---|---|---|---|
| Sept. 2009 | Lettuce: Romaine or Iceberg | *E. coli* O157:H7 | 29 | Multistate |
| Sept. 2009 | Lettuce | *E. coli* O157:H7 | 10 | Multistate |

| Date | Vehicle | Etiology | Confirmed Cases | States/Provinces |
|---|---|---|---|---|
| April 2010 | Romaine | *E. coli* O145 | 33 | 5:MI, NY, OH, PA, TN |
| Oct. 2011 | Romaine | *E. coli* O157:H7 | 60 | Multistate |
| April 2012 | Romaine | *E. coli* O157:H7 | 28 | 1:CA Canada |
| June 2012 | Romaine | *E. coli* O157:H7 | 52 | Multistate |
| Sept. 2012 | Romaine | *E. coli* O157:H7 | 9 | 1:PA |
| Oct. 2012 | Spinach and Spring Mix Blend | *E. coli* O157:H7 | 33 | Multistate |
| Apr. 2013 | Leafy Greens | *E. coli* O157:H7 | 14 | Multistate |
| Aug. 2013 | Leafy Greens | *E. coli* O157:H7 | 15 | 1:PA |
| Oct. 2013 | Ready-To-Eat Salads | *E. coli* O157:H7 | 33 | Multistate |
| Apr. 2014 | Romaine | *E. coli* O126 | 4 | 1:MN |
| Apr. 2015 | Leafy Greens | *E. coli* O145 | 7 | 3:MD, SC, VA |
| June 2016 | Mesclun Mix | *E. coli* O157:H7 | 11 | 3:IL, MI, WI |
| Nov. 2017 | Leafy Greens | *E. coli* O157:H7 | 67 | Multistate and Canada |
| Mar. 2018 | Romaine | *E. coli* O157:H7 | 219 | Multistate and Canada |
| Nov. 2018 | Romaine | *E. coli* O157:H7 | 88 | Multistate and Canada |
| Sept. 2019 | Romaine | *E. coli* O157:H7 | 23 | Multistate |

| Date | Vehicle | Etiology | Confirmed Cases | States/Provinces |
|---|---|---|---|---|
| Nov. 2019 | Romaine | *E. coli* O157:H7 | 104 | Multistate and Canada |

**The *E. coli* O157:H7 bacteria**

12. *Escherichia coli* are the name of a common family of bacteria, most members of which do not cause human disease. *E. coli* O157:H7 is a specific member of this family that can cause bloody diarrhea (hemorrhagic colitis) in humans. In the years since *E. coli* O157:H7 was first identified as a cause of diarrhea, this bacterium has established a reputation as a significant public health hazard.

13. *E. coli* O157:H7 lives in the intestines of cattle and other ruminants. *E. coli* O157:H7 is also notable among pathogenic bacteria for its extremely low infectious dose—that is, the number of bacteria necessary to induce infection in a person. While for most pathogenic bacteria it takes literally millions of bacterial colonies to cause illness, it is now known that fewer than 50 *E. coli* O157:H7 bacteria can cause illness in a child. The practical import is that even a microscopic amount of exposure can trigger a devastating infection.

14. The most severe cases of the *E. coli* O157:H7 infection occur in young children and in the elderly, presumably because the immune systems in those age populations are the most vulnerable. After a susceptible individual ingests *E. coli* O157:H7, the bacteria attach to the inside surface of the large intestine and initiates an inflammatory reaction of the intestine. What ultimately results is the painful bloody diarrhea and abdominal cramps characteristic of the intestinal illness.

15. The mean incubation period (time from ingestion to the onset of symptoms) of *E. coli* O157:H7 is estimated to be two to four days (range, 1-21 days). Typically, a patient with an

acute *E. coli* O157:H7 infection presents with abdominal cramps, bloody diarrhea, and vomiting. The duration of diarrhea in children with *E. coli* O157:H7 infections are significantly longer than that of adults.

16. *E. coli* O157:H7 can produce a wide spectrum of disease from mild, non-bloody diarrhea, to severe bloody diarrhea accompanied by excruciating abdominal pain to life-threatening complications. In most infected individuals, the intestinal illness lasts about a week and resolves without any long-term effects. Antibiotics do not appear to aid in combating these infections, and recent medical studies suggest that antibiotics are contraindicated for their risk of provoking more serious complications. Apart from good supportive care, which should include close attention to hydration and nutrition, there is no specific therapy.

17. About 10% of individuals with *E. coli* O157:H7 infections (mostly young children) go on to develop hemolytic uremic syndrome (HUS), a severe, potentially life-threatening complication. The essence of the syndrome is described by its three central features: destruction of red blood cells, destruction of platelets (those blood cells responsible for clotting), and acute renal failure due to the formation of micro-thrombi that occlude microscopic blood vessels that make up the filtering units within the kidneys.

18. There is no known therapy to halt the progression of HUS. The active stage of the disease usually lasts one to two weeks, during which a variety of complications are possible. HUS is a frightening illness that even in the best American medical facilities has a mortality rate of about 5%. The majority of HUS patients require transfusion of blood products and develop complications common to the critically ill.

**Charles Nunley's *E. coli* O157:H7 infection**

17. Plaintiff purchased and consumed Fresh Express brand romaine lettuce from Mariano's Grocery Store, located at 625 S. Main St., Wheaton, IL 60187, multiple times in the two weeks preceding his illness.

18. Plaintiff's symptom onset occurred on or about November 11, 2019, and included abdominal pain, nausea, and diarrhea, which soon turned bloody

19. Plaintiff's condition continued to deteriorate, and he sought medical care at Central DuPage Hospital on November 13 and again on November 15. Plaintiff remained hospitalized until November 20, 2019.

20. A stool sample collected from Plaintiff at Central DuPage Hospital tested positive for *E. coli* O157.

21. Plaintiff continues to recover from his *E. coli* infection.

22. As a result of his *E. coli* O157:H7 infection, Plaintiff suffered significant physical injury, economic loss, medical bills, pain and suffering, loss of normal life, lost wages, and emotional distress.

## CAUSES OF ACTION

## COUNT I—STRICT PRODUCT LIABILITY

23. Plaintiff incorporates the preceding paragraphs of this Complaint, by this reference, as if each and every of these paragraphs were set forth here in its entirety.

24. The Defendants manufactured, distributed, and sold the adulterated food that injured Plaintiff and caused him to become infected with *E. coli* O157:H7.

25. Food and drink that is contaminated with *E. coli* O157:H7 is unsafe when put to the use reasonably foreseeable considering the nature of the product. Namely, *E. coli* O157:H7-contaminated food and drink is unfit for human consumption.

26. The food that Plaintiff purchased from the Defendants was contaminated with *E. coli* O157:H7. Plaintiff's consumption of the contaminated food caused him to become infected with *E. coli* O157:H7and to suffer injuries as a direct and proximate result.

27. The food that Plaintiff purchased and consumed was contaminated with *E. coli* O157:H7 when it left the Defendants' control.

28. The Defendants are strictly liable to Plaintiff for the harm proximately caused by their manufacture and sale of an unsafe and defective food product.

29. As a direct and proximate result of the Defendants' strict liability as set forth herein, Plaintiff was caused to suffer serious injuries, has suffered bodily pain and mental anguish, has suffered and will suffer in the future pain of body and mind, has incurred medical and related expenses, and has suffered and will suffer in the future other damages.

## COUNT II—NEGLIGENCE

30. Plaintiff incorporates the preceding paragraphs of this Complaint, by this reference, as if each and every of these paragraphs were set forth here in its entirety.

31. The Defendants designed, manufactured, distributed, and sold food products that were adulterated with *E. coli* O157:H7 bacteria, a potentially deadly pathogen. These products, as a result of adulteration, were unfit for human consumption, and were not reasonably safe as designed, constructed, manufactured, and sold.

32. The Defendants owed a duty to all persons who were the eventual consumers of their product, as well as all persons foreseeably at risk of secondary transmission of disease, to manufacture and sell food that was safe to eat, was not adulterated with potentially harmful pathogens like *E. coli* O157:H7, and that was not in violation of applicable food and safety regulations.

33. The Defendants owed a duty to all persons who were the eventual consumers of their products, as well as all persons foreseeably at risk of secondary transmission of disease, to maintain their premises in a sanitary and safe condition so that no one eating food produced at the Defendants' premises would be exposed to, or infected by, a potentially harmful pathogen like *E. coli* O157:H7. The Defendants also owed a duty to all persons who were the eventual consumers of their products to use wholesome ingredients, and to source those ingredients from entities who use reasonable care in the growth, harvest and distribution of those products, in the production of food for sale to the public.

34. The Defendants breached the duties it owed to persons who were the eventual consumers of their products, as well as all persons foreseeably at risk of secondary transmission of disease, by committing the following acts and omissions of negligence:

    a. Failing to adequately maintain or monitor the sanitary conditions of their food, drink, water, premises, and employees;

    b. Failing to properly operate the locations where they manufactured their food in a safe, clean, and sanitary manner;

    c. Failing to prevent the transmission of *E. coli* O157:H7 from their food, drink, water, premises, or employees, to the ultimate consumers of their products, and those foreseeably at risk of secondary transmission of disease;

    d. Failing to properly train their employees and agents on how to prevent the transmission of *E. coli* O157:H7 on their premises, or in their food, drink and water;

    e. Failing to properly supervise their employees and agents to prevent the transmission of *E. coli* O157:H7 on their premises, or in their food, drink and water;

    f. Manufacturing and selling adulterated food in violation of 410 ILCS

620/3.2;

  g. Storing, offering, and delivering food in violation of 410 ILCS 620/3.1 and 410 ILCS 620/3.4;

  h. Failing to maintain their premises in a clean, sanitary, and healthful manner in violation of 410 ILCS 650/1 and 410 ILCS 650/2; and

  i. Failing to properly and carefully select and monitor the entities from which they purchased and received raw materials used in the production of the products.

35. As a direct and proximate result of the Defendants' negligent acts as set forth herein, Plaintiff was caused to suffer serious injuries, has suffered bodily pain and mental anguish, has suffered and will suffer in the future pain of body and mind, has incurred medical and related expenses, and has suffered and will suffer in the future other damages.

## COUNT III—BREACH OF WARRANTY

36. Plaintiff incorporates the preceding paragraphs of this Complaint, by this reference, as if each and every of these paragraphs were set forth here in its entirety.

37. By offering food for sale to the general public, the Defendants expressly warranted that such food was safe to eat, that it was not adulterated with a harmful pathogen, and that the food had been safely prepared under sanitary conditions.

38. By offering food for sale to the general public, the Defendants also impliedly warranted that such food was safe to eat, that it was not adulterated with a harmful pathogen, and that the food had been safely prepared under sanitary conditions.

39. The Defendants breached their express and implied warranties with regard to the food they manufactured and that was ultimately consumed by Plaintiff.

40. As a direct and proximate result of the Defendants' breach of express and implied

warranties as set forth herein, Plaintiff was caused to suffer serious injuries, has suffered bodily pain and mental anguish, has suffered and will suffer in the future pain of body and mind, has incurred medical and related expenses, and has suffered and will suffer in the future other damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

a. Judgment for Plaintiff against the Defendants for just compensation in a fair and reasonable amount for the damages above set forth; and

b. Such additional and/or further relief, including interest, costs, and reasonable attorney fees, as this Court deems just and equitable.

### JURY DEMAND

Plaintiff hereby demands a jury trial.

Dated: May 13, 2020

/s/Gary A. Newland
Gary A. Newland   ARDC  6217146
Erin A. Adamski   ARDC  6317891
NEWLAND & NEWLAND, LLP
121 S. Wilke Road, Ste. 301
Arlington Heights, IL 60005
Tel:  (847) 797-8000
Fax:  (847) 797-9090
gary@newlandlaw.com
erin@newlandlaw.com

and

William D. Marler
MARLER CLARK, LLP, PS
1301 Second Avenue, Suite 2800
Seattle, WA  98101
Tel:  (206) 346-1888
Fax:  (206) 346-1898
bmarler@marlerclark.com
jschell@marlerclark.com
(*pro hac vice* pending)